*WESTERN DIST.*
*September, 1836.*

HUTCHINGS
*vs.*
FIELD ET AL.

---

HUTCHINGS *vs.* FIELD ET AL.

APPEAL FROM THE COURT OF THE FIFTH JUDICIAL DISTRICT, THE JUDGE OF THE SEVENTH PRESIDING.

| 10L | 237 |
| 45 | 1347 |
| 10L | 237 |
| 47 | 201 |
| 10 | 237 |
| 111 | 491 |
| 111 | 504 |
| 10 | 237 |
| 122 | 113 |

Where A, in consequence of several persons endorsing his notes in bank, sells, conveys and delivers, by an authentic or notarial act, several slaves to them, to be holden until they shall be fully satisfied for their endorsement; that A shall have the power of redeeming said slaves on paying said notes as they fall due: *Held*, that this is a mortgage for the security of the endorsers, and not a sale which vests the property with the right of alienation.

WESTERN DIST. When there is no price stipulated, and the words of the act or instrument
September, 1836.    of conveyance, are, that the persons to whom it is made, shall *hold the*
━━━━━━━━━━     *property until their endorsements are satisfied*, it repels the idea of a
HUTCHINGS        contract of sale.
*vs.*
FIELD ET AL.   Such a conveyance is not a sale with the power of redemption. A right to
                   refund the price and take back the property, necessarily supposes a price
                   has been stipulated. There was no determinate price, and the party was
                   not divested of title.

A mortgage is valid even if the possession of the property effected is given
   to the mortgagee. It is not of the essence, though of the nature of the
   contract of mortgage, that the mortgagor should remain in possession.

This is a petitory action in which the plaintiff seeks to
recover several slaves in the possession of 'the defendants, J.
N. Field, J. Brownson, J. Y. Saunders and H. Carlin, together
with their hire at fifteen dollars per month; and also to
recover damages from James Plaisted, who he alleges sold
these slaves to the defendants, without right or title to them.

The defendants pleaded a general denial; and averred
that by a notarial act passed the 16th of February, 1828, the
negroes claimed in the petition were sold, transferred and
delivered, with other property, by the plaintiff, to James L.
Johnson, Evan Bowles, George Singleton, Isaac L. Baker
and William Sterling, by whom the said negroes have
been regularly sold and transferred to these respondents.
They pray to be quieted in their possession, and that the
suit be dismissed.

The defendants further pleaded, that they purchased the
negroes referred to, with warranty, and for a valuable
consideration, and cite their vendors, Johnson and others in
warranty.

The vendors answered and set up title to the slaves, under
the notarial act of the 16th of February, 1828, in which they
aver the plaintiff sold and transferred them, with other pro-
perty, for and in consideration of having endorsed three
several promissory notes, amounting to three thousand seven
hundred and twenty dollars, which notes were discounted in
the bank at Opelousas, and the proceeds received by the plain-
tiff. That to secure them against their endorsements, the

plaintiff sold and delivered the said property to be held by them until they be fully satisfied. They aver they had to pay all of said notes when they became due, and thereby acquired a full and complete title to the slaves in question. Plaisted averred that he acted as the agent of the vendors in selling said slave, and set up the act of the 16th of February, 1828, as the authority under which they were sold.

Upon these issues and pleadings the parties went to trial.

The act of the 16th of February, 1828, by which the plaintiff conveyed the slaves to the vendors of the defendants contains the following clauses.

" Whereas, at the suit of sundry persons against William Hutchings, in the parish of St. Landry, the following property has been seized, to wit: a plantation and tract of land, etc., lying and adjoining the town of Opelousas, also ten negroes, all of which are in the hands of the coroner of the parish of St. Landry, and now offered for sale."

" And whereas, in order to release said property, and aid the said William Hutchings, James L. Johnson, E. Bowles, G. Singleton, Isaac L. Baker and W. Stirling, etc., did on the 9th of February, 1828, endorse for the said William Hutchings, three several promissory notes, for the entire sum of three thousand seven hundred and twenty dollars, in the Bank of Louisiana, at Opelousas. Now to secure the aforesaid endorsers for their said endorsements, the said William Hutchings has *bargained and sold*, and does by this act grant, bargain, sell, set over and deliver to them, the said endorsers, all and singular the above described property, to be holden by them, (said endorsers) until they shall be fully satisfied for their said endorsements. And it is agreed, that the said endorsers shall have the right of selling the above described tract of land, for such price as to them may seem right, and upon such terms of credit as will meet the payments of the above notes; provided the terms of sale of the land shall not be less than one, two and three years. It is also agreed, that the said William Hutchings shall have the privilege of redeeming said negroes, on his paying up said notes as they

WESTERN DIST. fall due, and fully discharging said endorsers from all respon-
September, 1836. sibility on account of their said endorsements, etc."

HUTCHINGS
*vs.*
FIELD ET AL.

The same property, included in the above act, had been previously mortgaged to the bank, by Hutchings and wife, to secure a loan of two thousand dollars. This formed part of the debt for which the new notes were given and endorsed, by the persons above mentioned.

The agent of the endorsers in writing to one of them, explains the object and nature of the foregoing act, in the following manner:

"To James L. Johnson, Esq.

" Sir, I have been obliged, in order to carry into effect your wishes and those of your co-endorsers, to wit: to aid Mr. Hutchings, and at the same time to secure you, to take from Mr. H. a sale and conveyance of the land and negroes to the endorsers, which as their agent and attorney in fact, I have accepted. The notes could not be discounted on yesterday the 16th instant, because the bank was not in funds; and no assurance could be had that they would ultimately be discounted, because a board of directors could not be had. It was then with no small difficulty that I prevailed on their creditors to relinquish even momentarily their lien on the property. They finally consented to accept the notes as collateral security, provided the negroes be taken entirely out of the possession and control of Hutchings; and so distinct and positive was this proviso, that it was requisite that they should not remain even one night in his hands. They consent to wait until the first of May, to see whether the notes can be discounted; if they are discounted then the creditors who receive their money will immediately subrogate you to their rights. The bank will subrogate you as the renewals are paid up, and in the mean time they retain their lien, which renders you as safe as if they were transferred to you. If, on the 1st of May, the notes are not discounted, the land and negroes will not be subject in your hands to the executions, which are suspended until then, and

you will be answerable for the delivery of the negroes. I have engaged a man to take the negroes down to you, and you will consider them yours. Duty to yourself and to the gentlemen who have lent you their names, will teach you the importance of having a watchful eye to them.

WESTERN DIST.<br>
September, 1836.<br><br>
HUTCHINGS<br>
vs.<br>
FIELD ET AL.

"Your friend, etc.,

"R. N. OGDEN."

"It is expressly understood that the negroes are to remain in your hands. "R. N. O.

"Opelousas, February 17th, 1828."

The evidence showed that the endorsers for whose security the negroes in question were mortgaged, paid into bank the sums, and took up their notes for which they were bound.

The negroes were then sold by James Plaisted, Esq., as agent of the endorsers of Hutchings, in 1831, for their benefit, and the present defendants were purchasers at said sale. The district judge decided that the sales were legal and gave judgment for the defendants. The plaintiff appealed.

*Simon*, for the plaintiff.

*Brownson*, for the defendants.

1. The instrument executed between the plaintiff and defendants is a sale; the price is the amount which the endorsers agreed to pay for him in bank; the terms used are those of a sale; plaintiff sells and delivers, and the condition of defeasance only makes it a sale on condition. In such a case the property is acquired to the purchaser, unless the seller complies strictly with the condition stipulated. *Louisiana Code, article* 2545. *Ibid.,* 2547. The fruits belong to the purchaser. It is not an antichresis, because it contains no stipulation that the fruits shall be deducted annually from the interest and afterwards from the principal debt. *Louisiana Code, article* 3143. Nor is there any thing to show that such were the intentions of the parties. On the contrary, the stipulation that the plaintiff should have a certain

31

limited time to redeem the slaves, by repaying the money, is inconsistent with such an idea.

2. But whether the act be a mortgage or a sale, the plaintiff has no right to recover ; the defendants have paid the debt stipulated, and the plaintiff has shown no return of the money, or offer to return it. He agreed by the act to put the property in possession of the defendants, and gave up the possession accordingly. There is nothing against good morals in that stipulation, therefore it ought to be enforced. How then can he be permitted to retake the property without paying the amount as agreed? In authorizing this the court would violate the positive and expressed intentions of the parties. If the plaintiff had tendered a restoration of the price, the case might have a different appearance.

3. It was not stipulated, whatever may be said to be the character of the act or the contract in question, that the defendants should account for the services of the negroes ; they were lawful possessors, as owners, in case the conditions were not complied with, and they neither expressly nor impliedly stipulated to account for the services of the negroes. Johnson, one of the defendants, agreed, it is true, to divide the profits of his sugar plantation with the plaintiff, but it is in evidence that Johnson made no profits. '

*Bullard, J.,* delivered the opinion of the court.

The plaintiff sues to recover certain slaves in possession of the defendants severally, which he claims as owner. The defendants set up title under a sale made by James Plaisted, who, they allege, was duly authorized to sell them ; and that the plaintiff, by an act passed before James Ray, Notary Public, on the 16th of February, 1828, sold and conveyed said slaves, together with other property, to J. L. Johnson, E. Bowles, G. Singleton, I. L. Baker, and W. Stirling, by whose assent they were sold to the defendants.

The title of the defendants depends, therefore, upon the character and constitution of the instrument passed before

Ray, which, the plaintiff contends, created only an antichresis or a mortgage, but which, the defendants insist, amounts to a sale of the slaves in question.

That instrument recites, that a certain tract of land in Opelousas, and the slaves now in controversy, had been seized in execution as the property of Hutchings; that Johnson, Bowles, Singleton, Baker, and Stirling, in order to release the property from seizure, endorsed for Hutchings three promissory notes, one for seven hundred and seventy dollars, one for five hundred and fifty dollars, and one for two thousand four hundred dollars, payable twelve months after date, in the Bank of Louisiana. "Now, in order to secure the aforesaid endorsers for their said endorsements, Hutchings sells, sets over, conveys and delivers to his said endorsers, the aforesaid property, to be holden by them until they shall be fully satisfied for their said endorsements. It is further agreed, that the endorsers shall have the right to sell the tract of land upon such terms of credit as will meet the payment of the above notes, not to exceed two and three years. It is further agreed, that Hutchings shall have the right of redeeming the slaves on paying the notes as they fall due, and fully discharging his endorsers from liability on account of the same."

We are of opinion that this is not evidence of a sale of the slaves. No price is stipulated. It is true, a consideration for the contract, such as it existed, is stated, to wit: that the other contracting parties had become his endorsers, and bound themselves to pay certain sums of money if he did not, upon demand and notice. And the declared intention of the parties, was, to secure and indemnify the endorsers in the event of their being rendered liable, and on their payment of the notes. It is also true, words of conveyance, such as are usual in contracts of sale, are employed. But we are to look at the substance and essence of contracts, rather than their form. The expressions used in the act, that the parties are to hold the property until they shall be fully satisfied on account of their endorsements, repels the idea of a sale. The agreement, as to the sale of the land on credit, is evi-

WESTERN DIST.
September, 1836.

HUTCHINGS
vs.
FIELD ET AL.

Where A, in consequence of several persons endorsing his notes in bank, sells, conveys and delivers, by an authentic or notarial act, several slaves to them, to be holden until they shall be fully satisfied for their endorsement; that A shall have the power of redeeming said slaves, on paying said notes as they fall due: *Held,* that this is a mortgage for the security of the endorsers, and not a sale which vests the property, with the right of alienation.

When there is no price stipulated, and the words of the act or instrument of conveyance are, that the person to whom it is made, shall *hold the property until their endorsements are satisfied,* it repels the idea of a contract of sale.

HUTCHINGS
vs.
FIELD ET AL.

Such a conveyance is not a sale with the power of redemption. A right to refund the price and take back the property, necessarily supposes a price has been stipulated. There was no determinate price, and the party was not divested of title.

A mortgage is valid, even if the possession of the property affected is given to the mortgagee. It is not of the essence, though of the nature of the contract of mortgage, that the mortgagor should remain in possession.

dence of a mandate accepted by the endorsers. Instead of selling the land, which, we think, stands on the same footing with the slaves as to the title of the endorsers, they sold the slaves. It is contended that this is a sale with the right of redemption. A right to refund the price and take back the property, necessarily supposes that a price has been stipulated. In this case we think there was no determinate price. The intention of the parties evidently was to affect the property which formed the object of the contract to the payment of such sums as the endorsers might be obliged to pay to the bank; and the contract contains all the essentials of a mortgage, according to the definition of the Code. *Articles* 3245, 3249. It is true, possession of the slaves was given to the endorsers, but it is not of the essence though of the nature of the contract of mortgage, that the mortgagor should remain in possession.

We conclude, therefore, that the plaintiff did not divest himself of title.

We have doubted whether the defendants ought not to be maintained in possession until the money paid in bank by the endorsers shall have been refunded. But we are, upon the whole, of opinion, that the defendants are not subrogated to the rights of the original endorsers, and that the action to be exercised by them or their representatives, to enforce payment out of the property, is one which could not be divided so as to be exercised by the defendants severally. They must, therefore, be left to their recourse on the vendors in warranty and the rights of the endorsers under the original contract reserved.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled and reversed; and it is further adjudged and decreed, that the plaintiff recover of the defendants, severally, the slaves named in the petition, to wit: of John N. Field, the slave Simonson; of John Brownson, the slave Isaac; of Jared Y. Saunders, the slaves Jessee and Thorn; and of Hilaire Carlin, the other slave, named Tom: and it is further ordered, that the case

be remanded to the District Court for further proceedings, as <span style="font-variant:small-caps">Western Dist.</span> between the said defendants and their warrantors, and that *September*, 1836. the defendants pay the cost in both courts; reserving, how-ever, to the original endorsers, or their representatives, their rights under the original contract with the plaintiff, to be paid out of the property therein specified, such sums as they may have paid on account of the plaintiff.