Morgan, J.
John T. Ludeling, John Ray, Francis P. Stubbs and William R. Gordon, are sought to be made responsible in solido upon the following instrument:
*608 Office of the Vicksburg, Shreveport and Texas Railroad Company, $5168 08. Monroe, La., November 6, 1866.
On or before the third February, 1869, the Vicksburg, Shreveport and Texas Railroad Company will pay to the order of Wesley J. Q. Baker five thousand one hundred and sixty-eight dollars and eight cents, value received, with eight per cent, interest per annum from the third day of February, 1866, till paid, payable annually.
Signed, JOHN T. LUDELING, President.
Attest:
Jos* P. McGuire, Secretary.
Defendants’ responsibility is claimed upon the allegations that on the third February, 1866, they purchased the Vicksburg, Shreveport and Texas Railroad at sheriff’s sale, and that previous to the purchase they formed themselves into an association for the purpose of buying the railroad in question and operating it in carrying freight and passengers for hire. This, plaintiffs say, constituted them common carriers and commercial partners. Upon this ground judgment is asked against them in solido.
Defendants excepted, first, that the maker of the instrument, the Vicksburg, Shreveport and Texas Railroad Company, a corporation created by and according to law, is alone liable thereon, and not the individual stockholders, of whom defendants are only a portion; second, that defendants, if liable at all, are only jointly so with all the other stockholders of the company, who have not been sued ; third, they plead the prescription of three and five years. The exceptions were overruled, and, without waiving them, but on the contrary reiterating them, they answered, admitting that the obligation sued on was signed by Ludeling as President of the Vicksburg, Shreveport and Texas Railroad Company, “a company chartered by the acts of the Legislature of the State of Louisiana, and that it was countersigned by the Secretary of said company, who affixed the seal of the company thereto, but they deny that they are or ever were individually liable in any manner under said obligation.”
■ As between the plaintiffs and the defendants the serious questions presented for our solution are—
Mrst — Are the defendants, individually, liable on the obligation sued upon Í
Second — If liable at all, is their liability solidary or joint ?
Before entering upon the consideration of these questions, we must investigate the pretensions of the intervenor W. J. Q. Baker. He alleges that he, and not the plaintiff, is the owner of the obligation sued on. If he is, of course the suit is at an end. He alleges that the obligation was made in his favor and intended to be between them and *609 the defendants and others a statement of accounts among themselves; that when he gave it to plaintiffs it was not stamped, and that they were never authorized to put stamps upon it. He shows that it was given to plaintiffs by him as security for a debt due by Mrs. Wilson ; that this debt of Mrs. Wilson was never ascertained; that if it ever existed it is extinguished by payment and prescription; that they took no steps to secure the debt or keep it alive, and made no effort to protect the surety, and abandoned the whole claim; that they have no right to bring this suit until they have shown contradictorily with Mrs. Wilson the amount of her indebtedness. He prays that the suit be dismissed; that the indebtedness of Mrs. Wilson be declared prescribed and discharged by her bankruptcy, and, if the suit is not dismissed, that the obligation sued on be declared to be his property, and that it be delivered to him.
Baker was the holder of the document sued upon. It was made payable to his order. It was in negotiable form. He does not deny having pledged it to the plaintiff. It was pledged to secure the debt of a third party. But the act of pledge was a voluntary one on his part, and it was competent for him to make it. The indebtedness for which it was pledged was acknowledged by him, aud it had been contracted by him. He can not be listened to now when he denies it.
The evidence satisfies us also that he subsequently transferred the obligation which had before been pledged to the plaintiffs in full property and in satisfaction of this indebtedness. He swears he did not. But his testimony is contradicted by several witnesses. Shortly after the transfer he went into bankruptcy. To enable him to receive the benefit of the bankrupt law, it was necessary that he should file a schedule of all his property, and to swear to the fidelity of his return. If the obligation sued on was only in pledge with the plaintiffs, it was still owned by him. He had a residuary interest in it, and upon his, or his assignee, paying the amount for which it stood pledged, it would have been returned to him or to his assignee. He did not place it upon his schedule. As he swore to the truth of his return, if he did not place it on that return, the only charitable conclusion that we can come to is that it was not his property.
His position that, because the Obligation sued on was not stamped when it was delivered to the plaintiffs, it is therefore a nudum pactum, is entirely untenable. If he gave them the obligation without being stamped when stamps should by law have been placed upon it, it was a wrong doing of his own from which he can draw no protection. Besides, the plaintiffs had the right to cause the required stamps to be placed upon it. The ^requirements of the law are complied with if the stamps are upon it when it is sought to be enforced. *610 It is sufficient for us to know that they are upon it when the case comes before us for investigation. The statement that, when the obligation was given to him it was not stamped because it was only intended as a memoranda of settlement between himself and those interested with him in the railroad, and that they were purposely left off it, that it should not be negotiated or transferred, does him no good. It only shows that he parted with the obligation despite the agreement he was under with his associates to keep it out of commerce. Under no hypothesis can he be listened to when he claims ownership of the obligation. His intervention, therefore, must be dismissed.
This brings us to the case between the plaintiffs and the defendants.
It is conceded that the defendants, with others, bought at sheriff’s sale the property of the Vicksburg, Shreveport and Texas Railroad. To state the case more broadly, it is conceded that the defendants, with others, at sheriff’s sale purchased all the rights, privileges, franchises and property belonging to the Vickburg, Shreveport and Texas Railroad Company. This company was a corporation established by law. As a corporation thus established its members were not personally responsible for the debts of the company beyond the amount of stock which they individually held.
Now the question propounded to us is: When Ludeling and others purchased the rights, privileges, franchises and property belonging to the Vicksburg, Shreveport and Texas Railroad, did the immunity of the stockholders of that company from liability beyond the amount of their stock attach to them ?
The question, we think, must be answered in the negative. The purchase of Ludeling and his associates conveyed to them all the property of the corporation which was sold by the sheriff. It conveyed to them the privileges and the franchise of the corporation, its powers to operate the railroad, etc.' The sheriff’s sale made them the owners of the road, its right of way, its property, its franchise, but it did not, and could not, make of them a corporation, for corporations are created only by special act of the Legislature or by associations under the general law regulating the mode in winch corporations are formed. This sale conveyed to them the title to the rights and property of the company, but, as regards those rights and that property, it made them joint owners thereof, and nothing else. In other words, the sheriff’s sale to Ludeling and his associates of the property, rights, privileges and franchise of the Vicksburg, Shreveport and Texas Railroad Company did not make of them that company. It only conveyed to them, in joint ownership, the property which they bought.
It is contended that the Legislature of the State, by subsequent act, *611 ratified this sale. This is true. But no one here disputes the verity or validity of the sale. If this act of ratification, besides the ratification, constituted them a corporation, their corporate rights would take effect only from the passage of the act. The act was passed subsequent to the publishing of the instrument sued upon. Its effect was not and could not be retroactive. The rights of the holders of the obligation had vested, and the Legislature could not shake them.
The defendants have referred us to many decisions of the courts of England and of our sister States, collected in Redfield on Railways, in support of their defense. So far as we have been enabled to examine them, they do not apply. They relate to the power to sell railroads under mortgages, their franchises, and the right to operate them, none of which are questioned in this controversy.
They also contend that the obligation sued on purports to have been issued by the Vicksburg, Shreveport and Texas Railroad Company^ and therefore payment can not be exacted of them individually. This does not, in our opinion, protect them. Obligors are bound not by the style which they give to themselves, but by the consequences which they incur by reason of their acts. It matters not what they chose to call themselves. The question is, how do their acts bind them ?
They next contend that the document sued on should not have been received in evidence, because it was not property stamped when issued. It was stamped when it was offered in evidence, and this we think is sufficient. The last defense set up is prescription. But it was not urged in argument, and it can not avail them. The note was due in February, 1869; this suit was instituted in'I878. The only remaining question is the extent of the defendants’ liability. Are they bound solidarity or jointly 9
Plaintiffs contend that they are each bound for the entire debt, they being engaged in carrying personal property for hire. The code declares that commercial partners are those who are engaged in “ carrying personal property for hire in ships or other vessels.”
In this sense we understand vessel to mean any structure which is made to float upon the water, for purposes of commerce or war, whether impelled by wind, steam or oars. Vide Webster’s dictionary, verbo: vessel.
Now it seems absurd that, if two or more persons should associate themselves together for the purpose of conveying personal property for hire between two points on some of the streams in Louisiana too shallow for navigation except in small boats prbpelled by oars, they would be bound, with regard to everything connected with such employment, in solido, while the operators of a railroad are only bound jointly. But we can neither add to the law nor take from it, and as *612 the law limits the solidarity of obligors engaged in carrying personal property for hire to that property which is carried on ships or other vessels, we can not extend it to those who carry it on a railroad. We therefore conclude that the defendants are liable jointly and not in solido.
Now it appears that others besides the present defendants, are owners of this road. Their names were given to the plaintiffs by the defendants. They should have been made parties to the suit. The owners are nine in number. Judgment must therefore be rendered in favor of the plaintiffs and against these defendants for the proportion due by each.
It is therefore ordered that the judgment of the district court be amended, and that each of the defendants herein pay one-ninth part of the judgment herein, and as amended the judgment be affirmed, appellees to pay costs of appeal.