Webre, Syndic, vs. Beltran & Co.

## No. 11,425.

## JOHN WEBRE, SYNDIC, VS. R. BELTRAN & CO.

| | |
|---|---|
| 47 | 195 |
| 49 | 480 |
| 49 | 1110 |
| 47 | 195 |
| 51 | 1516 |
| 47 | 195 |
| 111 | 491 |
| 111 | 504 |
| 47 | 195 |
| f122 | 82 |
| f122 | 754 |
| 47 | 201 |
| f122 | 754 |

1. It is not of the essence though of the nature of the contract of mortgage that the mortgagor should remain in possession. As a clause *to that effect merely*, placed directly in the authentic act of mortgage, would not change a contract of mortgage into one of *antichresis*, a like verbal collateral agreement would not produce such a result. Objection of parol evidence of such a verbal agreement on the ground that it was through such testimony sought to prove an *antichresis*, which can only be evidenced by a writing, was not well taken.

2. The voluntary cession of his property by a debtor does not impair the obligations of his legal contracts. Where the commission merchant of an insolvent planter has a privilege and *statutory pledge* upon a growing crop of sugar and molasses to secure advances which he has made upon the same—he is entitled to have the crop shipped to him for sale according to the stipulations of the contract for supplies. The syndic of the creditors is as much bound to ship the crop as the insolvent himself would have been.

3. If among the assets of an insolvent there be a thing which has been pledged, the possession of it does not pass to the creditors, being vested in the pledgee. The obligation of the pledge is contractual. It vests in the creditor the right of possession and privilege on the thing pledged. The right of detention being as much a part of the security as the things pledged are part of the guaranty, the creditor can not be deprived of the same by his debtor.

4. Where, under a verbal agreement with a sugar planter, as part of the general arrangement under which a factor has stipulated to furnish him supplies for a growing crop, a factor himself applied to and obtained from the United States authorities a license as the producer of the crop (giving the bond required in such case), and under such license received from the government (after a cession of his property by the planter) the bounty allowed on such crop, the syndic of the creditors ignore the stipulations of the contract between the parties, that the fund when received shall be applied, as imputed by the factor, to the debts due him by the planter, and require that the bounty be at once turned over and the factor forced (after possession of the same has been shifted from himself to the syndic) to litigate his rights and claims upon it inside of the insolvency *in concurso*, the rights of the creditors must be protected in some other manner.

The government having known and dealt only with the factor, the legal title to the claim for bounty was vested in him, and having been so vested under a contract which, if innominate, was legal as between the parties, the fund derived under the license could only be withdrawn subordinately to compliance with the conditions of the contract.

APPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.*

Action of syndic of an insolvent to recover:

1. Nine hundred and fifty-four dollars and eighty-five cents, the net proceeds of twenty-four hogsheads of sugar and twenty-one barrels of molasses, surrendered by Lacaze for the benefit of his creditors, and consigned in execution of an order of court by the provisional syndic of an insolvent to defendants for sale on the market of New Orleans.

2. Eight thousand one hundred and twenty dollars and ten cents, the proceeds of sugar, molasses and rice of Lacaze's crop of 1892, which was shipped by Lacaze to defendants prior to Lacaze's *cessio bonorum*, together with the amount of two United States bounty checks belonging to Lacaze, which defendants collected for his account before the insolvency.

3. Three thousand one hundred and seventy-eight dollars and forty nine cents, the amount of the bounty allowed to Lacaze on his crop of 1892 by the United States Government, which was collected by the defendants after Lacaze's *cessio bonorum*.

There was judgment for the defendants and plaintiff appealed.

*W. J. Waguespack* for Plaintiff and Appellant.

*Robert G. Dugué* for Defendant and Appellee.

The opinion of the court was delivered by

NICHOLLS, C. J.   On the 31st March, 1892, a contract, by authentic act, was entered into between the commercial firm of R. Beltran & Co. and A. J. Lacaze, in which it is recited that, for the purpose of cultivating and making a crop of sugar and molasses during the year 1892, on his Good Will plantation, the latter would require eight thousand dollars in money and supplies, which the firm agreed to furnish him from time to time.   Lacaze, on his part, bound himself to ship and consign his entire crop to Beltran & Co., at such times and to such places as they might require, and he authorized them to sell the same and apply the proceeds to the payment and reimbursement for all advances, commissions, interests, etc., and all such proper charges as are customary in New Orleans.   He further agreed that the firm should be entitled to interest on all advances

and commissions on all purchases and sales and brokers' commis-sion, and in the event of suit he bound himself to pay the fees of the attorney bringing the same.

In order to represent the amount of said advances, commissions, interest, etc., Lacaze subscribed four notes of two thousand dollars each to his own order and endorsed by him, payable on the 1st Jan-uary, 1893, with interest after maturity.

The act declared that in order to secure the payment and reim-bursement of the advances, interest, commission, etc., and the pay-ment of the notes, Lacaze recognized in favor of the firm the lien and privilege accorded by law to the furnishers of supplies up to the sum of eight thousand dollars upon the crops of said plantation of 1892, and did pledge and pawn the same in favor of the firm, and of any and all future holders of the notes, the whole in accordance with the provisions of Art. 3217 of the Civil Code, of Act No. 66 of 1874 and of Act No. 44 of 1882, and that Lacaze confessed judgment for the full amount of said notes in capital, interest, commissions, etc., in favor of the firm or any other future holder or holders of the notes. The act declares also that Lacaze mortgaged the Good Will plantation, with all appurtenances, together with all the crops of sugar and molasses that might be ground thereon during the year 1892, in order to more effectually secure the payment of the notes—the mortgage to remain in full force to secure the payment of any balance which might be due by Lacaze to the firm or general bal-ance of account over and above the net proceeds of the said crops. This act was placed of record in the mortgage books of the parish of St. John the Baptist on the day it was executed.

During the year 1892 application was made in the name of R. Bel-tran, a member of the firm of R. Beltran & Co., to the United States au-thorities at Washington (under the act of Congress granting a bounty to the producers of sugar) for a license as the producer of the crop of that year upon the Good Will plantation. The license was issued as applied for, and in course of time, after the cession herein-after mentioned, the bounty due resulting from the crop was paid over to R. Beltran, and by him to the firm of R. Beltran & Co.

A crop of sugar and molasses was, as contemplated by the parties in the act of 31st March, made upon Lacaze plantation, and the whole of the same with the exception of twenty-four hogsheads of

sugar and twenty-one barrels of molasses were shipped to and sold by Beltran & Co. prior to the 12th day of January, 1893.

On that day Lacaze made a cession of his property, and placed among the assets surrendered the twenty-four hogsheads of sugar and twenty-one barrels of molasses, then remaining on the planta-·tion. The sheriff of the parish of St. John the Baptist was first appointed provisional and subsequently definitive syndic of the insolvency. In his former capacity he obtained an authorization or order to ship the sugar and molasses which remained unsold to Beltran & Co., to be by them sold for the account of the insolvency. They were accordingly shipped to the firm, but whether under the order of the court, or in the usual manner of shipment in Lacaze's name, is one of the matters in contention between the parties.

Beltran & Co. did not appear on the bilan as *debtors* of Lacaze, and although amounts are mentioned as being due to the laborers and to the overseer, yet the amounts are not set down as privileged, but as ordinary debts.

After the appointment of the sheriff as definitive syndic he applied to Beltran & Co. to turn over to him the proceeds of the sugar and molasses which had been shipped to them after the cession. Meeting with a refusal, the present suit was instituted in which the syndic prays that Beltran & Co. be ordered to turn over to him the amount of the bounty received by them, and the net proceeds of the entire crop of 1892—by net proceeds being meant the amount remaining due on each shipment after the special incidental expenses of that particular shipment had been paid, and not the net amount of the payment of all the claims and indebtedness of Lacaze to the firm. The firm claims that under its contract and agreement with Lacaze it had the right to receive the moneys it did, and apply the same after payment of all claims which it had against Lacaze, and that after having availed itself of that right so far from there being a balance due to him, he remained their debtor for a large amount.

It appears that the house of Beltran & Co. had been for some time before the passing of the act of the 31st March, 1892, the commission merchants and factors of Lacaze, and that the opening of the season of 1892 found the latter indebted to the firm to the amount of several thousand dollars, and that he had unsuccessfully sought a continuance of business relations with the house for the year 1892. Failing to find another factor and commission merchant he returned to Beltran

& Co., and, by way of inducement to them, suggested and proposed that the firm, or one of its members, should be considered as the producers of the crop, and should apply as such for a license to the United States authorities; that Lacaze should be considered as the agent of Beltran & Co. on the plantation; that the latter should make the advances to cultivate and make the crop, which should be shipped for sale and sold by the house; that the proceeds of the crop and the bounty should be applied to the payment of all claims held by the firm, payment to be first imputed to the antecedent debt; that if after such application and payment there remained a balance it should be turned over to Lacaze, but if the amount was insufficient the latter was to remain a debtor for the deficiency; and it appears that this proposition verbally made was verbally executed. This agreement was prior to the act of 31st March, 1892, but the parties testify that the latter act was not intended to vary, affect, or to alter their relations, rights and obligations under the former. Objection was made on the trial to parol proof as to the verbal agreement, on the ground that it tended to show an act of *antichresis* between Beltran & Co. and Lacaze, and that such a contract could only be evidenced by writing.

The District Court rendered judgment in favor of the defendants, dismissing plaintiff's suit, reserving defendant the right to demand the amount of balance due by Lacaze with interest and privilege as prayed for. Plaintiff appealed.

It will be seen that the syndic did not call upon Beltran & Co., the factor and commission merchant of Lacaze, for an account, and a setting up by them of the various claims and pretensions which they might have against the moneys in their hands, but ignored the fact of their having any claims and brought a direct action for the recovery at once of the entire fund. The effect of a judgment in his favor would be to do away (at least temporarily) with the imputations of payment made by the parties under their agreements; to oust or dispossess the firm of the possession of the money in their hands, shifting it to the syndic, and placing the fund inside of the insolvency, there to be disposed of *in concurso*. The theory upon which this demand is made is that there are a number of creditors having special privileges on the proceeds of the sugar and molasses, superior in rank to any privilege which Beltran & Co. might have; that those special privileged creditors having had their

hands tied by the acceptance of the surrender, and their right of in-
dividual action against the person and property of the insolvent
stayed, and the syndic representing merely the mass of creditors,
and not individual creditors, being without capacity outside of the
insolvency to champion and vindicate their separate rights, there-
fore unless the whole funds were brought into the insolvency those
creditors would be left without remedy.   We may say in passing that,
if there be creditors of the kind referred to, they do not seem to
have taken any action making their *status* as such known in the lower
court; the syndic is urging pretensions which have not been ad-
vanced by the parties themselves.

In the argument of this case the verbal agreement made between
Lacaze and Beltran & Co. has been made to have a much wider scope
than legitimately results from it.   A large part of appellant's brief
is directed to the legal proposition of manifest inconsistency in a
person asserting himself to be, at one and the same time, the owner
of a thing and the holder of a privilege or pledge upon the thing.
The argument is presented upon the theory that Beltran & Co. are
before the court attempting to hold the property and funds under
antagonistic pretensions.  We do not think the firm has claimed to hold
either the bounty or the crop, as owner in the absolute and unqualified
sense of that word which would give them the right to dispose of or de-
stroy the property free from all accountability or responsibility to any
one for the same.  . On the contrary, they admit that both the bounty
and the proceeds of the crop should be applied to the extinguishment
of Lacaze's debt to them.   The greatest legal effect which the firm
advances under the contracts and agreements they have made is
that they were legally entitled to receive the bounty and the crops·
and to impute the same to the payment of their claims as agreed on
between them and their debtor, and that until such application and
payment the funds could not be taken from their possession.   That
Lacaze was powerless to withdraw the funds and his syndic has no
greater right.   They deny that the funds could be taken from them
and placed in the hands of the syndic, and that they can, after this
shall have been done, litigate inside of the insolvency and *in con-
curso* their rights upon the fund.  So far as the proceeds of the sugar
and molasses are concerned, we need not go for the purposes of the
rights of Beltran & Co. further than to the act of March 31, 1892,

which is the act by which plaintiff claims their rights should be controlled.

We do not understand the plaintiffs to deny that the firm under the act 31st March acquired a mortgage upon the Good Will plantation and a privilege and pledge upon the crop thereon, to the extent that they made advances under that act. We do not think their rights were injuriously affected by the verbal agreement referred to. This court held in Hutchings vs. Field, 10 La. 244, that it is not of the essence though of the nature of the contract of mortgage that the mortgagor should remain in possession. Had the authentic act of January contained a clause that Beltran & Co. should take and retain possession of the property for the year 1892 and nothing more, that clause would not have the effect of changing the act of mortgage into an act of *antichresis;* a verbal collateral agreement that possession should be so held by the firm would of course have no such result. The objection, therefore, to parol proof of the verbal agreement that it was sought through it to prove an *antichresis* was not well founded.

In the case at bar it will be noticed that while Beltran & Co. had a mortgage on the real estate and the things forming part thereof—they also had on the crop not only a privilege, but a statutory pledge and pawn which could not be weakened by a stipulation that the debtor should by express agreement, consent to hold the possession of the crop as the custodian or holder of the same for the pledgor—if the stipulation did not add to the strength of the creditors' position, it at all events left it unimpaired as conferred by law. The stipulation was really in aid of the principles governing the contract of pledge that the thing pledged should be placed in the possession of the pledgor or a third person agreed upon.

The voluntary surrender made by Lacaze did not have the effect of impairing the obligations of this legal contract. Had he not made a cession it would have been his legal duty under this contract to have shipped the whole crop to Beltran & Co., to be by them sold and applied to the payment of their advances—the firm had *executed* (to a certain extent at least) *its part of the contract,* and by virtue not only of its privilege, but of its *statutory pledge* was entitled to have the shipment made. This right could not be impaired or destroyed by a surrender, and especially where no charge of fraud is made and the good faith and reality of the contract are not called

in question. Article 3164 of the Civil Code declares that "the creditor who is in possession of the thing pledged can only be compelled to return it when he has received the whole payment of the principal, as well as the interests and costs." The creditor has this legal right not only as against Lacaze, but as against the syndic. Bermudez vs. Ibanez, 3 M. 39; Jacquet vs. His Creditors, 38 An. 863.

The portion of the crop remaining unsold at the time of the surrender occupies no position different from the balance; Lacaze by his contract being bound to ship the whole crop, his syndic was under a similar obligation, having to respect Beltran & Co.'s vested right to a delivery. Succession of Farmer, 32 An. 1041. When once delivered the contract fell under the contract obligations of the parties as to its application. As regards the circumstances connected with the shipment of this portion of the crop, we think the testimony supports the claim of the defendant that it was shipped to the firm, as the balance of the crop had been shipped to Lacaze's name without special instructions. We think the deputy sheriff must be mistaken as to the paper which he believed to be the "bill of lading."

We do not think the argument of the plaintiff, that if we do not grant the specific relief asked for in this case, in the form in which it is asked, the result would be to leave either the mass of creditors of Lacaze, or creditors claiming special privilege in the particular property, or moneys held outside of the insolvency under pledge without remedy, is well founded. Several remedies we think could be suggested, but the question we are called on to answer here is the special question, whether the syndic of an insolvent can withdraw from a pledgee property in his possession under a lawful contract, as shown in this case; place it inside of the insolvency as an asset in the syndic's hands, forcing the pledgee to litigate his rights upon it *in concurso*. We think he has no such right.

In reference to the bounty collected by Beltran & Co., it is claimed that the law gave no privilege or pledge to the defendant upon that fund, and that not having been collected from the government at the time of the surrender it should be turned over to the syndic to be disposed of as the common pledge of all the creditors. It may be true that neither a privilege nor a pledge resulted by law in favor of Beltran & Co., by reason of their being furnishers of supplies, and that it would be necessary for them to base their right on

contract, but this is precisely what they do.  They rest upon the verbal contract between the parties made in the beginning of the year 1892, and the stipulations of the parties in regard to it.  In dealing with that question it must be borne in mind that that contract, made verbally, took form in the shape of a license issued directly from the United States Government to R. Beltran as the producer of the sugar on the Good Will plantation, and as the only party in interest—this to Lacaze's knowledge and with his consent; that this license has had its full effect and been completely executed between the government and Beltran, and that in order to obtain the benefit of the license Lacaze and his syndic would have as plaintiffs to attack it and its results.  It must also be borne in mind that the obtaining of the license was accompanied by the assumption of certain legal duties and obligations by Beltran; he was among other things obliged to furnish bond with security, which everything in the record would go to show Lacaze could not have done.

When we consider the taking out of this license was part of a general plan by which Lacaze was to be placed in position to cultivate his plantation for the benefit of his creditors; that large amounts were furnished him upon the conditions of the agreement then made; that no person had special or vested rights upon the bounty; that the government knew only and dealt only with Beltran, who held what may be said to be practically the legal title to the fund, we are of the opinion that the attempt to take this fund from the firm by direct action for its immediate transfer to the syndic is sustainable neither in law nor in equity.  The contract between the parties in reference to the license may be an innominate one, possibly it may not be strictly classed as a pledge, but be it what it may it was legal and vested the legal title to and control over the bounty, and authorized its application in a manner and to a purpose which neither Lacaze or his syndic can disregard.

Our attention has been called to the decision of the United States Circuit Court in the matter of Calder & Co. vs. Their Creditors. The point at issue there was entirely different from that here. In that case Calder, one of the producers of the sugar, claimed that the bounty granted by the government was not to be made applicable to the extinguishment of the debt of the producer.  The court held this to be untenable.  There is no claim here that the bounty should not

be made applicable to the payment of Lacaze's debts—that it is so available is admitted.

We are not in a position to judge accurately of the state of the accounts between Lacaze and Beltran & Co. A final account and adjustment appear to have been made between them, and the record shows the fact that that account was shown to several of the witnesses and commented upon by them, but counsel, for some reason, did not offer it in evidence.

It is not copied in the record, but has by consent been attached to the transcript filed here, but under a reservation of rights which makes the consent practically valueless. We can not consider it. Rice, in his work on evidence, Vol. I, p. 169, par. 103, says: "It is of constant concurrence on trials that a witness proves the execution of a paper in his possession for that purpose, and that the papers are not given in evidence unless the party who produced it thinks fit to use it. His right to refrain from using it under such circumstances is well settled."

The plaintiff in his petition did not, as we have said, ask for an account, nor did defendant in his answer tender one. Without excepting to the form of action he denied indebtednes and claimed a balance over, for which he asked the court by its judgment to reserve him a right of action. Without expressly pleading payment or the application of the funds in his hands up to a certain specified amount to the payment of claims held by him against Lacaze—he prayed that plaintiff's suit be *dismissed*, with a reservation of a right of action, as just above stated.

We do not know what the claims were which were thus used to extinguish liability to Lacaze. If the firm had valid legal existing claims to the amount stated, they had the right to apply funds in their own hands to their payment—making the imputation as agreed upon between them and Lacaze. Bloodworth vs. Jacobs, 2 An. 25; Pickersgill vs. Brown, 7 An. 314; Bank vs. Plow Company, 45 An. 1317.

Defendants' answer asked no affirmative relief; its allegations and its prayer were purely defensive. Defendants prayed that plaintiff's suit be dismissed, and the District Court so ordered. Construing this judgment as really under the form of plaintiff's action, the pleadings and the prayers, as one non-suiting the plaintiff, the judgment appealed from as so construed is hereby affirmed.

### ON APPLICATION FOR REHEARING.

We see no reason to change our views as expressed in the opinion rendered except in one particular.   Appellant complains that we have given a wrong construction to the judgment of the District Court, and by so doing have thrown the costs of the appeal upon him improperly.

We think his complaint well founded.   The limited reservation made in the judgment satisfies us that the court intended to pass finally upon the claims and accounts between Lacaze and his insolvency and the defendants, and cut off future examination and adjustment between the parties.   To this extent there was error.   These matters should be left open fully for examination and adjudication through an action of account.

For the reasons herein assigned it is ordered, adjudged and decreed that the judgment heretofore rendered by us be set aside, and it is now ordered, adjudged and decreed that the judgment appealed from be amended by reserving to the plaintiff the right to call for an accounting between the plaintiff and the defendants touching all matters between Albert J. Lacaze and the insolvency of Lacaze and the defendants, and to have examined and adjudicated upon all claims and counter-claims between them; that as so amended the judgment of the District Court be and the same is hereby affirmed.   Costs of appeal to be paid by the appellees.

Rehearing refused.