SUCCESSION OF SIMMES, WIDOW OF GOMEZ

_____

(July 14, 1927. Opinion and Decree.)

_____

(*Syllabus by the Court*)

1. Louisiana Digest—Sales—Par. 8; Marriage—Par. 159.
Where the owner of a lot of ground conveys it by an authentic act, purporting to be a sale, to a contractor for $600.00, and the contractor, after erecting a building on the lot, sells it to a homestead for $1800.00 cash and the homestead immediately sells it to the original owner for $1800.00 credit, the several transactions will be regarded as bona fide sales. The contention that the series of transactions should be regarded as a mortgage is untenable. Under such circumstances the fact that the owner is married, under the regime of the community, when the property is acquired from the homestead, creates a presumption that it is community property. The fact that originally the lot was owned by the wife, as her paraphernal property, is of no consequence.

Appeal from Civil District Court. Div. "C". Hon. E. K. Skinner, Judge.

This is an injunction enjoining sale of property belonging to Succession of Florence Simmes, Widow of Maximillion Gomez.

There was judgment for opponent and administrator appealed.

Judgment affirmed.

J. A. Morales, Josiah Gross, Jno. Basich, Jr., of New Orleans, attorneys for administrator.

Hugh S. Suthon, Fred Zengle, Jr., of New Orleans, attorneys of appellee.

WESTERFIELD, J. This is an appeal from a judgment enjoining, at the instance of the husband, the sale of certain real estate, in the succession of the wife, upon the ground that it is community property.

The sole issue is whether the property, the sale of which was enjoined, was a paraphernal or community asset.

The deceased acquired the property in question (Lot 19, Sq. 655, First District) March 11th, 1907, by act before E. H. Parson, N. P. At that time deceased was suffering, or enjoying, as the case may be, her first widowhood, a status, which, what-

ever emotion it may have superinduced, she afterwards became accustomed to. Emanuel Jones, Eugene Gomez and Louis Hamilton were three husbands she survived. At least, she is described in several authentic acts as the widow of all three of them, though some confusion exists as to her first husband. In one act of sale Louis Hamilton is accorded that honor, and James Simmes, whom we know positively as her fourth, last, and surviving spouse, is given second place. In an act of mortgage, Emanuel Jones is credited with primacy among the husbands of the deceased and Eugene Gomez given second place. Be that as it may, when the property in question was acquired, deceased was, for the moment, unmarried, thus stamping her acquisition with a paraphernal character. She married James Simmes in 1909. He survived her, and is the plaintiff in injunction here. It is contended that James Simmes, as husband, left much to be desired; that he was far below the average of his wife's husbands; and, he left his wife in 1915 and provided little or no support for her. Whatever may have been Simmes' shortcomings, he was legally married without a marriage contract and was not legally separated, a circumstance which creates the regime of the community of acquets and gains. Florence Simmes still owned lot 19 when she married Simmes. It is generally admitted that the lot was vacant, except for a flimsy structure described as a shack, valued at approximately $200.00. It was considered advisable to improve the property, by erecting a habitable structure, and to this end it was transferred to a party by the name of Emanuel Singer, as security, (the act purports to be a sale) for money he advanced to make the improvements. When the building was finished, Singer transferred it to the German-American Homestead, by act before F. J. Dreyfous, June 13, 1912, for $1800.00 cash,

and on the same day the homestead sold it to Florence Simmes, by act before the same notary, for the same consideration, wholly on credit.

The contention is that the lot, being paraphernal at the time of the Simmes marriage, the various transactions, called sales, by means of which money was obtained to improve the property, were in fact only mortgages, and that therefore title to the property in reality always remained in Florence Simmes, and her final acquisition during the regime of the Simmes community was of no importance, and simply amounted to a confirmation of title in her.

We are not in accord with this view.

The conveyance to Singer in the form of a sale for an alleged consideration of $600.00, of which sum $300.00 was employed to pay off a pre-existing mortgage, was a reality, and not a simulation. Otherwise, the homestead acquired no title and gave none to Florence Simmes. If Singer became the owner, by this transaction, Florence Simmes parted with the ownership, since two people can not own the same property at the same time.

The succession of Florence Simmes claims title through the homestead as its author, and at the same time assumes the wholly inconsistent position of attacking the homestead's title as a disguised mortgage. We quote from counsel's brief:

"It is clear from this evidence that the transfer by deceased to Singer was intended to secure him in the building; that the transfer by Singer to the homestead was for the purpose of realizing the amount of the building, and the transfer by the homestead to the deceased was intended to place the property in the statu quo ante, subject to the loan in favor of the homestead. It certainly was not intended by deceased to part with her title forever. Such a transaction can hardly be called a sale in the sense of word.

"Courts will regard the essence of contracts, rather than their form. The form is subordinate to the real character, which depends entirely on the obligations they import; and though the parties designate their convention as a particular contract, yet if in reality it be another, it will be so considered and acted on."

Knox vs. Dixon, 4 La. 406.
Hutchins vs. Field, 10 La. 237.
Gasquet vs. Oakey, 15 La. 537.
Chaffe vs. Ludellin, 27 La. 607.
Tete vs. Lamaux, 45 La. 1343; 14 So. 241.

Singer's acquisition was "to secure him in the building," the homestead acquired "for the purpose of realizing the amount of the building" and Florence Simmes acquired in order to restore the status quo ante. Three authentic acts are repudiated without a word of explanation or apology, upon the pretext of looking through form at the substance of transactions in order to restore to the succession the property with its erstwhile paraphernal status. The fact that deceased sold it, encumbered with a $300.00 mortgage, for an alleged consideration of $600.00, and reacquired it from the homestead for $1800.00 entirely on credit, is not, in this view of the case, of any importance.

We are of opinion that the ancient title of Florence Simmes must be ignored and the property regarded as an acquisition by her during her last community.

It is therefore presumed to be community property. R. C. C. 2402. This presumption has not been overcome. There is no recital in the act to the effect that Florence Simmes was purchasing with her separate funds and therefore no estoppel against her husband, who signed the act to authorize his wife. The contention that the purchase price was subsequently paid by the wife alone is not sustained by the evidence, besides, if the succession is a creditor of the community adjustment can be had in a proper proceeding.

We might add that a purchase from a building and loan association can not be treated as a mortgage but is a sale whatever the intention of the parties. Holloman vs. Alexandria Building & Loan Assn., 137 La. 970, 69 So. 764; Lichtenstein vs. Lyons, 115 La. 1056, 40 So. 454; Fortier vs. Barry, 111 La. 776, 35 So. 900.

For the reasons assigned, the judgment appealed from is affirmed.